```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/16/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CRYSAL CROSLEY, as Parent and Natural Guardian of Z.C., and CRYSAL CROSLEY, Individually,

SVETLANA NISANOVA, as Parent and Natural Guardian of R.N., and SVETLANA NISANOVA, Individually,

SVETLANA NISANOVA, as Parent and Natural Guardian of Y.N., and SVETLANA NISANOVA, Individually,

      Plaintiffs,

-against-

DAVID C. BANKS, in his official capacity as Chancellor of the New York City Department of Education, and THE NEW YORK CITY DEPARTMENT OF EDUCATION,

      Defendants.

1:22-cv-7101 (MKV)

OPINION AND ORDER

---

MARY KAY VYSKOCIL, United States District Judge:

  Plaintiffs are two sets of parents who commenced this action on behalf of their three minor children, each of whom has been classified as a student with a disability pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. The question in this case is whether the New York City Department of Education (the "DOE") and its Chancellor, David C. Banks (together, "Defendants") have complied with an order from an Impartial Hearing Officer, which provided that Plaintiffs shall be paid for private school tuition, in addition to costs for related services and transportation services. The parties on each side have cross-moved for partial summary judgment.[1]

---

[1] While the parties' style their respective motions as ones for *partial* summary judgment, resolving these motions appears to resolve all issues remaining in the case.

## BACKGROUND[2]

Plaintiffs are the parents of three disabled children who live in New York City. Compl. ¶¶ 12–28. In early 2022, Plaintiffs filed a Due Process Complaint ("DPC") on behalf of each child, alleging that the DOE had failed to provide the children a free and appropriate public education during the 2021-2022 school year (and for some years prior) as required by the IDEA. Compl. ¶¶ 44, 72, 100. After hearings were held, an Impartial Hearing Officer ("IHO") entered orders in favor of Plaintiffs. Compl. ¶¶ 46–49, 74–77, 102–05.

As relevant here, the IHO ordered the DOE to fund the placement of one of the children (referred to as "Y.N.") "at the Private School for the 2021-2022 school year as follows: 1) tuition in the amount of $67,000.00; 2) related services in the amount of $50,128.00; and 3) special transportation in the amount set forth in the 'School Transportation Service Agreement' from January 3, 2022 through June 24, 2022 . . . ." JR at 64. With respect to another child (referred to as "Z.C."), the IHO ordered that the DOE shall "pay for special education transportation at [the] New York state Medicaid rate for comparable transportation services for the actual number of days . . . [Z.C.] was transported as supported by certified contemporaneous billing records." JR at 22.[3]

The IHO orders were all issued by July 2022 and no appeals were filed. Compl. ¶¶ 52, 67, 80, 95, 103, 108. Nearly a month after the final decision was entered, however, the DOE still had not made any of the required payments. Compl. ¶¶ 55, 83, 111.

---

[2] The following facts are taken from the Complaint [ECF No. 1] ("Compl.") and the Joint Record submitted by the parties [ECF No. 34-1] ("JR"), and they are undisputed unless otherwise noted. *See Dobbins v. Ponte*, No. 15-cv-3091, 2017 WL 3309726, at *1 (S.D.N.Y. Aug. 2, 2017) (citing *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011)).

[3] The IHO also entered an order in favor of a third child, referred to as "R.N." Compl. ¶¶ 76–77. The terms of that order are not pertinent to this opinion, however, because after this suit was filed the DOE complied with all aspects of the order, thereby mooting Plaintiffs' claims on that score. [ECF No. 19].

**PROCEDURAL HISTORY**

Plaintiffs filed this action alleging that Defendants had failed to comply with the IHO orders. [ECF No. 1]. Shortly after filing, Plaintiffs moved for a preliminary injunction, seeking an Order directing the DOE to comply with the IHO orders and to make all relevant payments. [ECF Nos. 6-8]. The Court held a Status Conference in connection with that motion, at which the DOE represented that it had processed certain payments and expected Plaintiffs to receive funds within 10 business days.

The Parties filed a Joint Status Letter two weeks after the conference, advising the Court that all relevant payments had been made, with the exception of payment for nursing services for one of the students, Y.N. [ECF No. 19]. Plaintiffs also advised the Court that the DOE was attempting to "claw back" payments made for Z.C.'s transportation services. [ECF No. 19]. Because Plaintiffs had only recently been apprised of this attempt, they were unable to confirm whether the "claw back" had actually occurred. [ECF No. 19]. The failure to pay for nursing services for Y.N. and the status of the transportation payments for Z.C. were thus the only issues briefed in connection with the motion for a preliminary injunction.

The Court denied Plaintiffs' motion, concluding that Plaintiffs' briefing addressed only the merits of their claim and insufficiently addressed the other factors relevant to a preliminary injunction. [ECF No. 28] ("PI Opinion") at 2. In so doing, the Court also addressed Defendants' request that Plaintiffs be directed to provide Z.C.'s attendance records reflecting actual dates of attendance, to determine whether any overpayment had been made with respect to transportation services. The Court found that request to be "premature," given that "Defendants have not responded to the Complaint and have not sought relief by cross-motion." PI Opinion at 2 n.2.

The Parties subsequently agreed that the case could be resolved by way of summary judgment, and they filed a joint record to facilitate their anticipated motions. [ECF No. 34]. The

Parties then filed cross-motions for summary judgment, which have now been fully briefed. *See* ECF Nos. 38 ("Pls. Br."), 51 ("Defs. Br"), 55 ("Pls. Reply"), and 57 ("Defs. Reply").

## STANDARD OF REVIEW

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "may not make credibility determinations or weigh the evidence." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). In ruling on summary judgment, the court "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Id.* If there is evidence in the record that supports a reasonable inference in favor of the opposing party, summary judgment is improper. *See Brooklyn Ctr. For Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 64 (2d Cir. 2021). When confronted with cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Dish Network Corp. v. Ace American Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021) (internal quotation marks omitted).

## DISCUSSION

The Parties raise two primary issues in their cross-motions for summary judgment. First, the Parties dispute whether the IHO ordered Defendants to pay for Y.N.s at-school nursing services. Second, the Parties dispute whether Defendants are required to fund the full costs associated with Z.C.'s transportation for the 2021-2022 school year. In addition, a third and tangential issue emerged during briefing: whether Defendants acted unprofessionally in their briefing by disclosing personal information about the founder of the school the children attended.

I.     Y.N. NURSING COSTS

Plaintiffs brought this case to enforce the IHO orders. Because those orders were not appealed to the state review officer, they are binding. *See* N.Y. Educ. Law § 4404(1)(c) ("The decision of the impartial hearing officer shall be binding upon both parties unless appealed to the state review officer."). Acknowledging as much in their briefing, Plaintiffs stated: "In deciding whether a Student-Plaintiff is entitled to tuition and related services funding under the [IDEA], the Court is constrained by the final Order issued by the [IHO]." Pls. Reply at 1. Accordingly, the DOE must pay only what the IHO ordered it to pay. As it relates to student Y.N., this included the following:

1) tuition in the amount of $67,000.00;

2) related services in the amount of $50,128.00; and

3) special transportation in the amount set forth in the 'School Transportation Service Agreement' from January 3, 2022 through June 24, 2022 . . . .

JR at 64. That is everything.

Plaintiffs contend that the DOE has not complied with this directive because it has refused to pay for Y.N.'s at-school nursing services. Plaintiffs argue that payment for such services was required because the term "nursing services" falls under the umbrella of "related services" as that term is used in the IHO order. The consequence, Plaintiffs claim, is that the DOE is obligated to pay the full cost of nursing services, though the exact cost for such services was not disclosed to the IHO. Pls. Br. at 8. Plaintiffs may be correct that nursing services qualify as "related services." However, that being the case does not advance their cause. The IHO ordered the DOE pay a specific and definite amount of $50,128 for related services. As such, it does not matter whether nursing services or anything else for that matter falls within the ambit of "related services."

Whatever that term covers, the DOE has done as directed so long as it pays the sum certain it was ordered to pay, which it has indisputably done. Defs. Br. at 5–6.

Attempting to obviate this plain result, Plaintiffs argue that "[g]iven a fair and full reading of the IHO's [Decision], it is clear that the IHO intended for DOE to fund Y.N.'s 1:1 nurse as a part of the education and related services she received during the 2021-2022 [School Year], but failed to order a specific amount for same." Pls. Br. at 3. Put differently, Plaintiffs contend that the IHO simply made a mistake by not specifically and separately directing the DOE to fund Y.N.'s nursing services. The Court is skeptical that a mistake was made, given the scant references to nursing services in the underlying administrative record, which puts into question whether the issue was ever properly raised before the IHO. *See* Dfs. Br. at 14–15. In any event, Plaintiffs had forty days to appeal the ruling to the state review officer if a mistake had been made, but they elected not to do so. As a result, the IHO decision (purported mistakes and all) became final and binding. *See* N.Y. Educ. Law § 4404(1)(c)

Plaintiffs also argue that even if the IHO did not order payment for nursing services, the Court should do so through its inherent equitable authority. Specifically, Plaintiffs argue as a matter of public policy that having failed to provide Y.N. a free and appropriate public education, Defendants should not now benefit by avoiding costs it would have incurred in the first instance. But this appeal to policy over process is untenable. Plaintiffs had the opportunity to seek payment for nursing services before the IHO. To the extent they neglected specially to seek an amount for such costs, Plaintiffs cannot raise that issue now for the first time. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004). To the extent the IHO erred in not awarding such fees, Plaintiffs had the opportunity to appeal that order to the state review officer. Having failed to exhaust those available remedies, an appeal for equitable relief falls flat. The Court thus deems

itself bound by the by IHO order, which clearly does *not* require full and separate payment for nursing services.

Finally, in the alternative, Plaintiffs seek to remand the issue to the IHO for clarification. In an IDEA case, "[a] court may remand a proceeding when it needs further clarification or does not have sufficient guidance from the administrative agencies." *Franco v. New York City Dep't of Educ.*, 416 F. Supp. 3d 302, 305 (S.D.N.Y. 2019) (internal quotation marks omitted). Generally, "[a] remand is appropriate when the educational expertise of the IHO or [state review officer] is necessary to resolve an issue." *Id.* (internal quotation marks omitted). There is no reason to remand here. The IHO order was clear, and the payments required are unmistakable; no expertise or clarification is required. Accordingly, Plaintiffs' motion for summary judgment on this issue is denied, while the cross-motion filed by Defendants is granted.

## II. Z.C. TRANSPORTATION COSTS

Z.C.'s Parent contracted to pay $163,500 for transportation services for the 2021-2022 school year. The DOE had not paid for these services at the time the complaint was filed, but it paid this amount in full shortly thereafter. [ECF No. 59].[4] The DOE now claims that it overpaid, since the $163,500 covered the transportation costs for the whole school year (regardless of how many days Z.C. actually used those services), and that the IHO ordered the DOE to pay only for the days that Z.C. was transported to school. As such, the DOE asks that the Court direct Plaintiffs to turn over the attendance records for Z.C., at which point "Defendants will determine whether they need to request a return of any funds in relation to transportation." ECF No. 59 at 2. The Court declines to enter such an order.

---

[4] At the request of the Court [ECF No. 58], Defendants filed a letter on July 25, 2023, clarifying the status of payments the DOE previously made for Z.C.'s transportation services. [ECF No. 59].

This case was brought by Plaintiffs, who sought to be paid for private school tuition, in addition to costs for related services and transportation services. The DOE has now paid for all costs associated with Z.C.'s schooling, including the full cost for transportation services. In Plaintiffs' words, this "should have put the issue to bed." Reply Br. at 6. In the Court's determination, it has. Plaintiffs sought payment and they have received it. Defendants now want to examine Z.C.'s records in the hopes of getting a refund—purportedly defending the taxpayers, but only at the expense of a Parent of a disabled child. The Court is in no position to offer the requested relief. The DOE may well be correct regarding the scope of the IHO ruling. However, this is Plaintiffs' case; no counterclaim has been filed; and the relief sought by Plaintiffs has been received. That should be the end of the litigation.

Accordingly, since Plaintiffs' claim has been paid, its motion is denied as moot. The DOE's motion for summary judgment on this issue is also denied. Plaintiffs, however, are granted leave to replead in the event that the DOE ultimately attempts to claw back the funds already paid. Hopefully, the DOE reevaluates its position in light of the above.

### III.   USE OF PERSONAL INFORMATION

The three children on whose behalf this case was brought all attended the same school: the International Institute for the Brain ("iBrain"). Patrick Donohue is the founder of iBrain. In a footnote in its opposition brief, Defendants published private information about Mr. Donohue and his family. Defs. Br. at 3 n.2. In particular, Defendants stated that Mr. Donohue is married to the director of the transportation company used by Z.C., and that the company is registered to Mr. Donohue's home address. Defs. Br. at 3 n.2. The footnote contains a hyperlink to a website which provides the home address, and a separate hyperlink to a website which shows that Mr. Donohue also is the founder of the law firm representing Plaintiffs in this case. Defs. Br. at 3 n.2. The website displays a picture of Mr. Donohue and his disabled daughter.

8

Plaintiffs contend that Mr. Donohue's personal information has no relevance to this case and that its publication was done as "a form of punishment or revenge." Pls. Reply at 13. In a separate letter, Plaintiffs requested that the Court direct the Clerk of the Court to strike the documents in which this information appears and to order Defendants to refile its brief without the hyperlinks in the footnote. [ECF No. 54]. Alternatively, Plaintiffs requested that the Court direct the Clerk of Court to seal Defendants' brief. [ECF No. 54].

Defendants argue that they have done nothing untoward, and that the steps requested by Plaintiffs are inappropriate because Defendants have published the personal information of Mr. Donohue in several other cases without objection by Plaintiffs and because all the information is publicly available online. Defs. Reply at 9. Defendants also contend that Mr. Donohue's connection to the transportation company is relevant because it is iBrain, which Mr. Donohue founded, that required the parents of its students in need of special transportation to contract with the transportation company which, according to the IHO, provided near "extortionate" terms in its transportation contract. Defs. Reply at 9.

The Court finds the footnote concerning. Defendants note elsewhere in their briefing that this case is "not about contract enforcement between [the transportation company] and Plaintiff-parent, but about enforcement of the IHO Decision." Defs. Reply at 4. Indeed, Defendants explain that they "are not a party to this contract and so its terms have no bearing on Defendants' relationship with Plaintiffs." Defs. Reply at 4. As such, by Defendants' own admission, any information that goes to the enforceability of the transportation contract plainly has no bearing on this case. Defendants' decision to include the footnote with Mr. Donohue's personal information is thus superfluous at best, and menacing at worst. That the offense has been repeated in other cases does not make things better; however, it does appear to eliminate any benefit that could be derived from sealing the briefs in this case. The horse (unfortunately) is out of the barn.

Defendants and their counsel are on notice that this sort of conduct is unacceptable and borderline sanctionable.  Unless unique issues arise in a future case which (somehow) warrant the inclusion of this sort of footnote and public disclosure of personal information, this should be the last case in which Defendants deploy this suspect tactic.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' motion for partial summary judgment is denied, while Defendants' motion for partial summary judgment is granted in part and denied in part.  The parties are ORDERED to advise the Court by letter, within one week of this Opinion and Order, whether there are any issues outstanding or if the case can be closed.

The Clerk of Court respectfully is requested to close the Motions at ECF Nos. 37 and 50.

**SO ORDERED.**

Date:  **August 16, 2023**　　　　　　　　　　　　_____
　　　　**New York, NY**　　　　　　　　　　　　　**MARY KAY VYSKOCIL**
　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**